# A CASE

IN THE

# SUPREME COURT OF ILLINOIS.

THIRD GRAND DIVISION.

APRIL TERM, 1866.

## SOPHIA C. NEWMAN *et al.*

*v.*

## WELLS WILLETTS.*

1. CONVEYANCE—*from husband to wife—whether it is operative.* Prior to the passage of the "married woman's act" of 1861, a deed from a husband to his wife, made during coverture, could vest no title in the wife; they were incapable of making contracts of that nature between themselves.

2. What might be their rights and powers, in that regard, under the act of 1861, is not discussed.

3. DOWER RIGHT—*not subject to execution.* A widow's right of dower in land, not assigned, is not liable to sale on execution.

WRIT OF ERROR to the Circuit Court of Mercer county; the Hon. JOHN S. THOMPSON, Judge, presiding.

---

*NOTE BY REPORTER.—This case was unavoidably omitted in the reports of the term at which it was decided.

Wells Willetts obtained a judgment against Sophia C. Newman, in the Circuit Court of Mercer county, at the April term, 1861, for $814.85, and an execution was issued thereon on the 4th day of October, 1861.

On the 27th of June, 1865, the judgment still remaining unpaid, Willetts filed his bill in chancery in the same court, against the judgment debtor, Sophia C. Newman and Martha A. Newman and Jay Martin, to subject certain land lying in Mercer county to the satisfaction of his judgment, alleging that Sophia C. Newman, being the owner in fee of the land, conveyed the same to Martin, who conveyed to Martha A. Newman, the daughter of Sophia; these conveyances, as Willetts alleges, being made without consideration, and for the purpose of hindering and delaying him in the collection of his debt. The bill prays that these deeds may be set aside, so that when the land is offered for sale under the judgment, there may be no cloud upon the title.

It appears, that on and prior to the 4th day of September, 1857, one Erasmus Newman, the husband of Sophia, was the owner of the land, and on that day executed a deed for the same to his wife. Erasmus Newman resided on the land with his family at the time of his death, which occurred in the year 1857, while absent from home, by drowning in the Gulf of Mexico.

It also appears that during his absence from the State, Erasmus made a will, but it does not seem to have been admitted to record in this State. He left several children surviving him. Sophia, the widow, and the children of Erasmus, continued to reside on the premises after his death.

The court rendered a decree, finding the fee simple title to the land to be in Sophia C. Newman, and granting the prayer of the bill.

To reverse that decree the defendants sued out this writ of error.

Mr. B. C. TALIAFERRO, for the plaintiffs in error.

Messrs. GOUDY & CHANDLER, for the defendant in error.

Mr. CHIEF JUSTICE BREESE delivered the opinion of the Court:

The most important question presented by this record is, what interest had Sophia C. Newman, the plaintiff in error, in the land and estate in controversy? On the answer to this question, this case would seem to turn.

It is claimed by the defendant in error, in his bill of complaint, that she had a fee simple estate in the land, and he filed the bill to subject it to sale to pay a judgment he had obtained against her, and the title to which she had conveyed to one Martin, and he to Martha Newman, a daughter of plaintiff in error. The bill seeks to set aside these deeds, so that, when the land is offered for sale under this judgment, there may be no cloud upon the title to deter purchasers.

We have looked in vain through this record to find evidence of a fee simple title in Sophia Newman to these premises. The allegation of the bill is, that she has such title, and the complainant in the bill is bound to furnish the proof thereof. It is not to be found in this record. The deed from her husband was inoperative, on account of the relationship then existing between them. A deed from a husband to his wife, during coverture, made when this deed purports to have been made (the 4th of September, 1857), could vest no title in the wife. They were incapable, at that date, of making contracts of this nature between themselves. 2 Kent Com. 129; *Whitcomb et al.* v. *Sutherland*, 18 Ill. 579; 1 Black. Com. 442.

What might be their rights and powers, under our act of 1861, we do not now discuss.

This deed, put in evidence by the defendant in error, shows that the husband claimed the title to the land, that it was in him at the date of the deed. The occupancy of the plaintiff

in error of the land, was equally that of the husband, and in her answer, she explicitly denies the claim of the fee in the land.

From all we can discover in the record, the utmost extent of claim which the plaintiff in error, Sophia, had in these premises, was only a right of dower not assigned, and a homestead right, the former of which is not liable to execution. *Blair* v. *Harrison*, 11 Ill. 386 ; *Hoots* v. *Graham*, 23 id. 83. Nor the latter, except in the mode prescribed by the act of 1851. Scates' Comp. 576.

The court should have decreed these rights, and these only, as being vested in the plaintiff in error, Sophia, and should have had the homestead right set off to her by a jury. That she had this right, is clear from the evidence, for it is proved that the husband, Erasmus Newman, was residing on the land with his family at the time of his death ; that the family continued, thereafter, to reside on the premises, and were so residing when the bill was filed. The right of dower follows on the death of the husband.

The defendant in error has not, we think, sustained his bill by proof, and the decree should not have passed in his favor.

For the reason given, the decree must be reversed and the cause remanded.

*Decree reversed.*